1 Cliff Palefsky (SBN 77683)
2 Matt Koski (SBN 262803)
McGUINN, HILLSMAN & PALEFSKY
3 535 Pacific Avenue
San Francisco, California 94133
4 Telephone:  (415) 421-9292
Facsimile:   (415) 403-0202
5 cp@mhpsf.com
mkoski@mhpsf.com

6 *Attorneys for Plaintiff*
G. Bradford Solso

UNITED STATES DISTRICT COURT

IN AND FOR THE NORTHERN DISTRICT OF CALIFORNIA

G. BRADFORD SOLSO,

        Plaintiff,

vs.

R-ZERO SYSTEMS, INC., a corporation,

        Respondent.

CASE NO.:   3:23-cv-2256

Judge:

Magistrate Judge:

**COMPLAINT**

**JURY TRIAL DEMANDED**

## COMPLAINT

Plaintiff G. BRADFORD SOLSO ("Solso" or "Plaintiff"), by and through his undersigned counsel, for his Complaint against R-ZERO SYSTEMS, INC. ("Defendant" or "R-Zero"), states as follows:

## NATURE OF THE ACTION

1. This is a federal diversity action involving common law claims arising under California law.  The action stems from an employment contract entered into between Plaintiff and Defendant, which provided expressly for the payment of a specific amount of severance from Defendant to Plaintiff in the event the Plaintiff's employment was terminated without cause.  Plaintiff's employment was in fact terminated without cause.  Defendant initially sought

McGuinn, Hillsman
& Palefsky
535 Pacific Avenue
San Francisco, CA 94133
(415) 421-9292

to mischaracterize Plaintiff's separation from Defendant as a mutually-agreed resignation and transition to a consulting arrangement. When Plaintiff pointed out that his separation was assuredly not mutual, Defendant then mischaracterized Plaintiff's termination as being for "poor performance". This was a sham, as Plaintiff's work was always of the highest caliber, and Defendant knew that it had never invoked the express notice and opportunity to remedy requirements that applied to the "poor performance" provision of Plaintiff's contract. Defendant did so in bad faith, for the purpose of avoiding its obligation to pay Plaintiff the severance he plainly is owed under the express terms of the contract.

**PARTIES**

2.  Plaintiff G. BRADFORD SOLSO ("Plaintiff" or "Solso") is an individual who is, and at all times relevant to this matter was, a resident of the State of California, County of Napa.

3.  Defendant R-ZERO SYSTEMS, INC. ("Defendant" or "R-Zero") is, and at all times relevant herein was, a Delaware corporation, with its principal business address in Salt Lake City, UT, and licensed to do business in California, with an office located in San Francisco, CA.

**JURISDICTION AND VENUE**

4.  The Court has subject matter jurisdiction in this action pursuant to 28 U.S.C. § 1332(a)(1) because the Plaintiff and Defendant are citizens of different states and more than $75,000 is in controversy. The combined value of Plaintiff's damages caused by Defendant's unlawful conduct exceeds $75,000.

5.  The Court has specific personal jurisdiction over Defendant because it has sufficient contacts with the state of California. At all times relevant to this matter, Defendant had numerous employees, Plaintiff included, in this judicial district, and maintained an office in San Francisco, CA, also in this judicial district. Plaintiff entered into the contract at issue in this judicial district and performed his services for Defendant under the terms of the contract from this judicial district.

6.  Venue is proper in this court pursuant to 28 U.S.C. § 1391(b)(2), as a substantial part of the events giving rise to Plaintiff's claims occurred in this judicial district.

McGuinn, Hillsman
& Palefsky
535 Pacific Avenue
San Francisco, CA 94133
(415) 421-9292

2
COMPLAINT

# FACTS

7. R-Zero manufactures and sells a number of products that utilize various sub-bands of ultraviolet light to create disinfection systems that kill pathogens, for use in occupied and unoccupied interior spaces, such as schools, detention centers, and senior living facilities.

8. In or around early September 2022, Solso was approached by a member of R-Zero's Board of Directors regarding whether Solso would be interested in helping R-Zero in a consultative capacity as it went through the process of on-boarding a new Chief Executive Officer ("CEO").

9. Solso met the incoming CEO Jennifer Nuckles ("Nuckles"), and they discussed R-Zero engaging Solso via a professional services agreement between R-Zero and Solso's consulting firm, Ashwood Management Partners, LLC ("Ashwood"). Under the terms of the professional services agreement, Ashwood was paid $400.00 per hour for its services.

10. After being retained, Ashwood aided R-Zero through multiple issues related to workforce planning and staff retentions/transitions, as well as preparing a report related to the fair market valuation of R-Zero's stock under Internal Revenue Code § 409a. The work on the 409a report was of particular significance to Nuckles, as a substantial component of her compensation was R-Zero equity.

11. After Ashwood submitted its first invoice for its services to R-Zero—for approximately 55 hours of work and $21,900.00—Nuckles initiated discussions with Solso regarding having Solso transition from consulting to becoming R-Zero's Chief Financial Officer ("CFO"). While being highly satisfied with the quality of Ashwood's services, Nuckles expressed to Solso that she thought it would be more cost-effective for R-Zero if Solso was a salaried executive employee rather than an hourly consultant.

12. In the context of his discussions with Nuckles and members of the R-Zero Board of Directors, Solso made it clear that if he was going to forego the greater near-term compensation under his comparatively much more lucrative consulting arrangement, he would require any employment contract to provide him with substantial severance pay should his employment with R-Zero be terminated without cause.

McGuinn, Hillsman
& Palefsky
535 Pacific Avenue
San Francisco, CA 94133
(415) 421-9292

3
COMPLAINT

13. While the discussions regarding Solso's potential employment proceeded, he continued his in-depth work on R-Zero's behalf. On or around October 31, 2022, Ashwood submitted its second invoice to R-Zero, for approximately 184 hours and $73,600.00.

14. Solso was then hired as R-Zero's CFO pursuant to an Employment Agreement ("Employment Agreement"), which became effective on November 1, 2022.

15. Pursuant to the Agreement, Solso was entitled to an annual salary of $300,000.00, an annual performance-based bonus of up to 30% of his annual salary, and the option to purchase 342,622 shares of R-Zero's common stock. The value of Solso's stock options was represented to him during the course of his contract discussions as a $5,000,000.00 package.

16. Further, and in line with Solso's above-described concerns regarding the substantial reduction in compensation he would be undertaking as an employee, in the event R-Zero terminated Solso's employment for any reason other than "Cause" or "Poor Performance", or if Solso resigned for "Good Reason", Solso was entitled to receive any unpaid base salary, reimbursement for unpaid expenses, the right to exercise any vested but unexercised stock options, and "a lump sum cash payment equal to six (6) months of [his] then base salary."

17. As Solso expressed to R-Zero in the course of their discussion of his Employment Agreement, the provision for his severance was integral to the Employment Agreement, and in its absence he would not have agreed to forego the consulting arrangement and become an employee.

18. Under the Agreement, "Cause" was defined to mean "a determination in good faith by the Company's Board of Directors that [Solso's] employment be terminated for any of the following reasons: (A) [his] conviction of a felony involving moral turpitude; (B) [his] willful material breach of any material provision of the Company's confidentiality agreement, including, without limitation, theft or misappropriation of the Company's proprietary information; or (C) conduct by [him] which constitutes gross neglect or misconduct in carrying out [his] duties resulting in either case a material harm to the Company."

19. Further, the Agreement defined "Poor Performance" to mean "failure to materially carry out the primary functions of your employment in a prolonged and consistent manner as determined by the Board of Directors in good faith."

20. Finally, and of primary importance, the Agreement expressly stated that Solso "shall not be deemed to be terminated for 'Poor Performance' [as defined] above unless the Company provides notice to [him] of the existence of any of the foregoing conditions within thirty (30) [days] of the initial existence of the condition, and [he] shall upon such notice have a period of thirty (30) days during which [he] may remedy the condition (and upon such remedy Poor Performance shall not be deemed to have existed)."

21. At around the same time that Solso began discussions with Nuckles about changing his status from a consultant to an employee, he also had begun reviewing Advanced Purchase Agreements ("APA") into which R-Zero had entered with a number of its customers.

22. In the course of conducting his review of the APAs and R-Zero's financials more broadly, Solso identified a number of irregularities related to *inter alia* revenue recognition practices, bookings, accounting, and the general accuracy and completeness of R-Zero's financial records.

23. Solso also worked diligently to remove any lingering negative effects of the problematic revenue recognition practices he had identified from the financials and the 409a valuation report he presented to the R-Zero Board of Directors ("Board") at a meeting in or around mid-November 2022.

24. In addition, Solso prepared a separate report for the Board, in which he outlined the accounting irregularities he had identified, and which pre-dated his tenure with R-Zero. He first presented that report to Nuckles, who directed that some of the language in the report be softened before it was presented to the Board in December 2022.

25. After the December board meeting, and during a regular 1:1 meeting in or around mid-December 2022, Solso and Nuckles discussed their working relationship. In particular, Solso raised the issue of her apparent disagreement with his approach to the financials.

26. Despite Solso's commitment to doing excellent work and his diligent efforts to uncover, report, and address the various irregularities he had discovered in a professional and transparent manner, his actions apparently caused Nuckles to develop a certain amount of animosity towards him.

27. After the December 2022 1:1 meeting between her and Solso, Nuckles contacted Deena Morgan ("Morgan"), Vice President for Channel Sales and Partnerships at R-Zero. Solso believes that Nuckles reached out to Morgan for the specific purpose of soliciting negative feedback about Solso. However, in response, Morgan provided Nuckles with extensive positive feedback about Solso.

28. After that, direct communications between Nuckles and Solso—outside of their regularly-scheduled 1:1 meetings—ceased almost completely.

29. Solso continued to devote substantial amounts of time and energy—roughly 10 hours per day, 7 days per week—to completing his work on R-Zero's behalf. However, rather than be included completely in the January 2023 board meeting as he had been in previous meetings, he was excluded from a "closed" session portion of the meeting.

30. Then, in early February 2023, Solso and others were notified by Morgan that she had concerns that her commissions and wages had been underpaid. Solso immediately initiated a compensation and commissions audit. Solso reviewed compensation plans, compensation statements, and transactions details, including contracts, purchase orders, and other information maintained in R-Zero's internal systems.

31. On or around February 10, 2023, Solso reported his findings internally, and stated his position that in light of the irregularities he had identified, he would not be able to make a clean representation regarding R-Zero's financials, e.g., as to the absence of fraud, the completeness of its financial records, etc.

32. On or around February 13, 2023, Solso had a 1:1 meeting with Nuckles. During that meeting they discussed the audit, and he reiterated his concerns and his inability to make a clean representation regarding R-Zero's financials. In response, Nuckles expressed her desire that Solso resign from his position as CFO.

33. Solso reminded her in reply that he had anticipated this possibility, that he was not agreeing to resign, that his Employment Agreement made specific provision for this eventuality, and that he expected the company to abide by the commitments to which it had agreed regarding his severance in the event he was terminated without cause. He then notified R-Zero's legal

McGuinn, Hillsman
& Palefsky
535 Pacific Avenue
San Francisco, CA 94133
(415) 421-9292

6
COMPLAINT

department that he was being terminated and requested that the appropriate documents be prepared.

34. Shortly thereafter, Solso was presented with a "Separation Agreement" and an "Advisor Agreement", neither of which reflected the severance compensation to which he was expressly entitled under the terms of his Employment Agreement. He also was notified, peculiarly, that his termination was the result of a mutual agreement between him and Nuckles, which is false.

35. Solso replied that the characterization of his termination was incorrect, and meticulously laid out what he was entitled to under the terms of his Employment Agreement. Solso subsequently met with R-Zero's general counsel to discuss the apparent miscommunication and conflicting perspectives regarding Nuckles' termination of his employment.

36. After that meeting, Solso was notified on February 24, 2023 that he was being terminated for "Poor Performance" under the terms of his Employment Agreement. At no point during his employment was Solso provided with either: (a) the required notice from R-Zero that he was exhibiting "Poor Performance" within 30 days, or; (b) the also-required 30-day period during which to cure any "Poor Performance", as was expressly required by his Employment Agreement.

37. R-Zero intentionally mischaracterized Solso's termination—first as a mutually-agreed resignation, then as a termination for "poor performance"—in a bad faith effort to deprive him of benefits under his Employment Agreement to which he was expressly entitled.

38. Further, R-Zero refused to pay him the severance he was expressly owed in the event he was terminated without cause, in breach of its obligations to him under the terms of his Employment Agreement.

**FIRST CAUSE OF ACTION**
**Breach of Contract/**
**Breach of the Implied Covenant of Good Faith and Fair Dealing**

39. Plaintiff hereby incorporates by reference the allegations set forth in ¶¶ 1 through 38 as though fully set forth herein.

40. Solso was hired as R-Zero's CFO pursuant to an Employment Agreement that became effective on November 1, 2022.

McGuinn, Hillsman
& Palefsky
535 Pacific Avenue
San Francisco, CA 94133
(415) 421-9292

7
COMPLAINT

41. Pursuant to the terms of the Employment Agreement, in the event R-Zero terminated Solso's employment for any reason other than "Cause" or "Poor Performance", or if Solso resigned for "Good Reason", Solso was entitled to receive any unpaid base salary, reimbursement for unpaid expenses, the right to exercise any vested but unexercised stock options, and "a lump sum cash payment equal to six (6) months of [his] then base salary."

42. As Solso expressed to R-Zero in the course of their discussion of his Employment Agreement, the provision for his severance was integral to the Employment Agreement, and in its absence he would not have agreed to forego the consulting arrangement and become an employee.

43. Respondent breached the Employment Agreement by: (a) failing to abide by the clear requirements contained in the Employment Agreement related to "Poor Performance" at any point during Solso's employment; and (b) subsequently refusing to pay Solso severance equaling 6 months' of his regular base salary, as expressly required by the terms of Employment Agreement.

44. Further, the Employment Agreement, like all contracts, contained an implied covenant of good faith and fair dealing, pursuant to which Plaintiff and Respondent were required to act in good faith in carrying out their respective obligations. Pursuant to the covenant of good faith and fair dealing, each party was prohibited from taking actions for the purpose of interfering with the right of the other party to receive the benefits of their agreement or from depriving the other side of the benefits of the agreement. *Foley v. Interactive Data* (1988) 47 Cal. 3d 654, 683.

45. Mischaracterizing an employee's termination without cause—first as a mutually-agreed resignation, and then as a termination for "poor performance"—when doing so would deprive the employee of benefits owed to him under the express terms of contract in the event of his termination without cause, is a textbook example of a breach of the covenant of good faith and fair dealing. See, *Guz v. Bechtel* (2000) 24 Cal. 4th 317, 353; *McCollum v. Xcare.net*, 212 F.Supp. 1142 (N.D.Cal. 2002); *King v. US Bank* (2020) 53 Cal.App.5th 675; *Lemmon v. Cedar Point,* 406 F.2d 94 (6th Cir. 1969); *Restatement of Employment Law*, Sections 3.05 and 2.07.

46. R-Zero breached the covenant of good faith and fair dealing by initially

McGuinn, Hillsman
& Palefsky
535 Pacific Avenue
San Francisco, CA 94133
(415) 421-9292

mischaracterizing Solso's termination as a mutually-agreed separation, and then subsequently as being for "poor performance", in an effort to deprive him of the severance payment to which he was entitled under the express terms of his Employment Agreement in the event he was terminated without cause.

47. Plaintiff has suffered damages proximately caused by Defendant's breaches, including *inter alia* his unpaid severance owed under the terms of the Employment Agreement, in an amount to be proven at trial.

WHEREFORE, Plaintiff prays for relief as set forth below.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendant as follows:

1. For general damages according to proof;
2. For interest as allowed by law;
3. For costs of suit herein incurred, including attorneys' fees under Cal. Labor Code § 218.5; and
4. For such other relief as the Court deems just and proper.

## **JURY DEMAND**

Plaintiff G. BRADFORD SOLSO hereby demands a trial by jury of all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure.

Dated: May 9, 2023                                                  MCGUINN, HILLSMAN & PALEFSKY

By: */s/ Cliff Palefsky*
Cliff Palefsky
Attorneys for Plaintiff
G. Bradford Solso

McGuinn, Hillsman
& Palefsky
535 Pacific Avenue
San Francisco, CA 94133
(415) 421-9292

9
COMPLAINT